PETER KUSTERER v. EDWARD SHEEHY ET AL.
(2463)

HULL, BORDEN, and SPALLONE, Js.

Argued October 12—decision released November 27, 1984

---

*Lewis R. Whitehead,* corporation counsel, for the appellants (defendants).

*Socrates H. Mihalakos,* for the appellee (plaintiff).

HULL, J. As a result of the refusal of the five defendants, who constituted the board of selectmen of the town of Woodbridge, to convey a parcel of town-owned land to the plaintiff, Peter Kusterer, he brought suit seeking a writ of mandamus. The defendants appeal[1] from the judgment granting the writ of mandamus and ordering conveyance of the land to the plaintiff. We find error.

On April 28, 1982, the board submitted to the Woodbridge planning commission the plaintiff's proposal to purchase 1.2 acres of property and the house thereon, known as the Rice House. On May 3, 1982, the commission disapproved the proposal, citing the "strategic"[2] location of the land and the fact that the parcel to be conveyed was approximately 12,728 square feet short of the 65,000 square foot minimum lot required by the town's zoning regulations.[3]

---

[1] This appeal, originally filed in the Appellate Session of the Superior Court, was transferred to the Supreme Court, and was thereafter transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

[2] At oral argument it was explained that the location was "strategic" because the land in question abutted a recreation area and would encroach upon that area if the parcel to be sold was increased to conform to zoning requirements.

[3] The land in question is located in a "Residence A" district. Although several uses other than purely residential ones are permissible under the ordinance, the 65,000 square foot minimum lot size is applicable to all uses under § 3.13 of the regulations. Section 3.44 of those regulations prohibits the creation or reduction of a lot below the minimum prescribed.

Thereafter, on July 12, 1982, a town meeting, called in response to a petition filed by the plaintiff, voted to sell the land in question. The board refused to comply with that vote and the plaintiff instituted this suit. The defendants briefed five claims of error, one of which is dispositive of this appeal.

The defendants' first claim of error focuses on the trial court's conclusion that the vote of the town meeting "was a mandate which the selectmen were obliged to follow." The defendants admit that the vote of the town meeting was to sell the property and that under § 4-4 of the town charter the board had a duty to "be [r]esponsible for carrying out the acts, policies and ordinances of the Town Meeting," as the plaintiff claims. The defendants assert, however, that this duty applies only to acts of the town meeting which are otherwise within its powers. We agree.

Section 4-2 (a) of the Woodbridge charter states: "The Board of Selectmen shall be the legislative body of the Town. It shall be vested with and shall exercise *all powers of the Town* except: (1) Powers otherwise allocated by this Charter. (2) Powers otherwise allocated by General Statute or applicable Special Act and not vested in the Board of Selectmen by this Charter. (3) Powers delegated by the Board of Selectmen by ordinance, so long as the same shall remain in effect." (Emphasis added.) That provision "plainly and adequately expresses the intention of its drafters [and] it must be given effect." *Burwell* v. *Board of Selectmen,* 178 Conn. 509, 519, 423 A.2d 156 (1979). A common sense reading of the provision indicates that the board retains control over the sale of town-owned land absent an express grant of that power elsewhere. Since we can find no such grant, we conclude that the board has plenary legislative powers in the town of Woodbridge.

This reading of the charter is bolstered by the maxim "expressio unius est exclusio alterius." To construe a

specific provision in the charter it is necessary to look at the charter as a whole. *Mitchell* v. *King,* 169 Conn. 140, 144, 363 A.2d 68 (1975). The legislative powers of the town meeting are specifically set out in the charter and the power to order the sale of town land is not among them. *State ex rel. Barlow* v. *Kaminsky,* 144 Conn. 612, 620, 136 A.2d 792 (1957).[4] We therefore conclude that the drafters did not intend to provide the town meeting with this power.

In view of our conclusion that the town meeting did not have the power to force the sale of the land in question, we do not reach the remainder of the issues raised by the defendants in this appeal.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.

---

[4] The town meeting is expressly given the power to *block* sales of the town land in excess of $25,000 under § 4-8 (a) of the charter. This provision demonstrates clearly that the powers of the town meeting relative to town land were considered by the drafters of the charter. Additional powers granted to the town meeting include the power to petition for enactment of certain ordinances; § 4-5 (g); the power to reject the proposed annual budget; § 6-2 (h); the power to reject supplemental appropriations; § 6-3 (b) (1); and the power to reject capital projects in excess of $1,000,000; § 6-4.