******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## CITY OF WATERBURY *v.* JANET BRENNAN ET AL.
### (AC 46178)

Elgo, Moll and Cradle, Js.

*Syllabus*

The defendant, in her individual capacity and as the executrix of the estate of the decedent, the former fire chief of the plaintiff city, appealed from the judgment of the trial court rendered in favor of the plaintiff. The defendant claimed that the trial court improperly granted the plaintiff's motion for summary judgment and improperly denied her motion for summary judgment. *Held*:

The trial court properly granted the plaintiff's motion for summary judgment, concluding that there was no genuine issue of material fact that the decedent, under the terms of his employment contract, was entitled to receive pension benefits under the collective bargaining agreement between the plaintiff and the plaintiff's municipal administrators association, rather than the collective bargaining agreement between the plaintiff and the firefighters union.

In light of the record and the plain and unambiguous language in the decedent's employment contract, this court concluded that the trial court properly denied the defendant's motion for summary judgment as no genuine issue of material fact existed as to whether the plaintiff's retirement board possessed authority under the city charter to unilaterally confer a pension benefit on the decedent pursuant to the collective bargaining agreement with the firefighters union.

The trial court did not abuse its discretion in denying the defendant's motion for reargument and reconsideration on the ground that the defendant did not properly preserve her claim that the plaintiff was not permitted to utilize the decedent's pension benefits to offset heart and hypertension benefits due to him, and the defendant did not demonstrate that the trial court committed plain error.

Argued February 5—officially released September 24, 2024

*Procedural History*

Action seeking, inter alia, a judgment declaring that no further workers' compensation payments are due to the defendants, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the court, *Roraback, J.*, denied the defendants'

motion for summary judgment, granted the plaintiff's motion for summary judgment, and rendered judgment thereon, from which the defendants appealed to this court. *Affirmed.*

*Robert C. Lubus, Jr.*, with whom, on the brief, was *Andrew S. Marcucci*, for the appellants (defendants).

*Daniel J. Foster*, corporation counsel, for the appellee (plaintiff).

*Opinion*

ELGO, J. In this action for declaratory relief, the defendant Janet Brennan[1] appeals from the judgment of the trial court rendered in favor of the plaintiff, the city of Waterbury (city). On appeal, the defendant claims that the court improperly denied her motion for summary judgment and, relatedly, that it improperly granted the motion for summary judgment filed by the city. We affirm the judgment of the trial court.

The backdrop to this appeal is detailed in *Brennan* v. *Waterbury*, 331 Conn. 672, 207 A.3d 1 (2019) (*Brennan I*). The city hired the decedent, Thomas Brennan, as its fire chief on November 8, 1991. Id., 675. Following a heart attack in 1993, the decedent filed a claim for heart and hypertension benefits pursuant to General Statutes § 7-433c. Id., 676. In December, 1993, the workers' compensation commissioner (commissioner)[2]

---

[1] The city brought this action against Janet Brennan in both her individual capacity and as executrix of the estate of her late husband, Thomas Brennan.

[2] General Statutes § 31-275d (a) (1), effective October 1, 2021, provides in relevant part that, "[w]henever the words 'workers' compensation commissioner,' 'compensation commissioner,' or 'commissioner,' denote a workers' compensation commissioner in [several enumerated] sections of the general statutes, [including sections contained in the Workers' Compensation Act, General Statutes § 31-275 et seq.] the words 'administrative law judge' shall be substituted in lieu thereof . . . ."

Because many of the events underlying this appeal occurred prior to October 1, 2021, in this opinion we use the terms workers' compensation commissioner or commissioner.

issued a finding and award, concluding that the decedent had sustained a compensable injury and ordering the city to pay all benefits to which he " 'is or may become entitled.' " Id. The city and the decedent thereafter attempted to no avail to reach an agreement on the payment of benefits. Id. While those negotiations were ongoing, the decedent elected to take disability retirement in December, 1995; id.; and the city's retirement board (board) authorized a 75 percent disability pension.[3] Id., 677 n.4. Although the city made payments to the decedent pursuant to § 7-433c in July, 1997, and June, 1999,[4] the decedent and the city never entered into a full and final settlement of the heart and hypertension claim. Id., 677.

The decedent died on April 20, 2006. Id., 678. As the court noted in *Brennan I*, "[i]t was not until 2013 that the decedent's attorney sought to finalize the decedent's permanent partial disability claim under § 7-433c." Id. The decedent's attorney subsequently moved to substitute the defendant as party claimant. The commissioner granted that motion and, in a decision dated December 7, 2015, ordered permanent partial disability benefits of 80 percent payable to her, less any advance payments made to date. See footnote 4 of this opinion.

The city commenced the present action by service of process on December 24, 2015. The gist of its complaint was that, due to a pension offset provision in the 1967 Waterbury city charter (city charter), no further

---

[3] In its response to the defendant's requests for admission, the city admitted that "the annual pay of [the decedent] at the time of his retirement was $86,690.78" and that "[t]he disability pension granted to [the decedent] was in the amount of $65,018.04." It is undisputed that the decedent received monthly pension payments in the amount of $5418.17 from the time of his retirement on December 30, 1995, until his death on April 20, 2006.

[4] The record before us indicates that the city made lump sum payments toward the decedent's § 7-433c claim in the amounts of $59,200.20 in 1997 and $17,982.12 in 1999.

heart and hypertension payments were due to the defendant.[5] The city thus sought a declaratory judgment that (1) "[p]ursuant to *Russo* [v. *Waterbury*, 304 Conn. 710, 41 A.3d 1033 (2012)], the city charter and [the decedent's] employment contract, any benefits allegedly due to [the decedent] under § 7-433[c] and the Workers' Compensation Act would have resulted in an offset of the defendant['s] or [the decedent's] pension"; (2) "[t]he offset applies to all amounts in contention, the 'net' amount in contention is zero and the city does not have to pay the defendant any additional benefits as a matter of law"; and (3) "[t]he judgment for benefits issued by the [commissioner] would result in a double recovery explicitly forbidden by the [city charter] and *Russo*, therefore the city does not have to pay the defendant any monies as a matter of law . . . ."[6]

The defendant subsequently filed a request to revise the city's complaint in multiple respects. The city filed an objection to that request, which the court sustained. The defendant also served two sets of requests for

---

[5] Section 2761 of the city charter contains an offset provision, which provides: "No payments of retirement, disability or death benefits shall be allowed or paid under the provisions of this act so long or for such period as payments are being made by [the city] under the provisions of the General Statutes relating to workers' compensation except when such payments would exceed the payments made under the provisions of the Workers' Compensation Act. In such cases the pensioner shall receive, in addition to his payments under the Workers' Compensation Act the difference between that amount and the amount which he would have received under the provisions of this act."

As our Supreme Court observed in *Russo* v. *Waterbury*, 304 Conn. 710, 714, 41 A.3d 1033 (2012), § 2761 of the city charter "allows the city to offset the . . . pension benefits [of municipal employees] based on their heart and hypertension benefits" under § 7-433c.

All references to the city charter herein are to the 1967 city charter unless otherwise indicated.

[6] The city also sought injunctive relief "prohibiting the payment of any benefits to the defendant following the ruling of the [commissioner] until [its request for] declaratory relief has been decided" by the trial court. That injunctive relief is not at issue in this appeal.

admission on the city in 2019 and 2021; copies of the city's responses thereto were filed with the court. At no time did the defendant answer the city's complaint.

On April 21, 2021, the city filed a motion for summary judgment, which was accompanied by a memorandum of law and several exhibits, including copies of the decedent's employment contract with the city (employment contract), the affidavit of Cynthia Van Deursen, a benefits analyst with the city, the affidavit of Daniel J. Foster, an attorney with the city, and collective bargaining agreements between the city and both the Waterbury Municipal Administrators Association[7] and the Waterbury Firefighters Association, Local 1339 (union). On September 29, 2021, the defendant filed an objection to that motion, as well as her own motion for summary judgment.

The primary disagreement between the parties, as detailed in their respective motions for summary judgment, concerned precisely which collective bargaining agreement governed the decedent's pension with the city. After hearing argument from the parties, the court rendered summary judgment in favor of the city. In so doing, the court concluded that no genuine issue of material fact existed as to whether the decedent, under the terms of his employment contract, was entitled to receive pension benefits under the collective bargaining agreement between the city and the Waterbury Municipal Administrators Association (administrator agreement),[8] rather than the collective bargaining agreement

---

[7] In her affidavit, Van Deursen stated that the "Waterbury Municipal Administrators Association" was a labor union and was "also known as the 'Management Union.' "

[8] The record contains copies of two collective bargaining agreements between the city and the Waterbury Municipal Administrators Association, which covered the time periods of 1989–1993 and 1994–1998, respectively. Because there is no material difference in those agreements relevant to this appeal, for convenience we refer to them as the administrative agreement.

between the city and the union (firefighter agreement).[9] In addition, the court rejected the defendant's claim that certain actions on the part of the board created an issue of fact as to whether the decedent was entitled to the benefits set forth in the firefighter agreement.

With respect to the city's obligation to pay workers' compensation benefits pursuant to § 7-433c, the court noted, in light of the undisputed evidence of pension payments made to the decedent; see footnote 3 of this opinion; that, if the city "is permitted to offset pension payments . . . against any as of yet unpaid workers' compensation benefits to which [the decedent] might lawfully be entitled, the offsets would exceed the amounts due so as to relieve the city of any liability for payments on account of workers' compensation awards." The court then concluded that the defendant could not "escape [the] offset rules reducing amounts payable under workers' compensation awards by amounts that are received by way of pension payments" pursuant to the terms of the decedent's employment contract. The court thus granted the city's motion for summary judgment and denied the defendant's motion.

On July 11, 2022, the defendant filed a motion seeking reargument and reconsideration, to which the city filed an objection. The court heard argument from the parties and thereafter denied that motion, and this appeal followed.

As a preliminary matter, we note the well established standard that governs our review of a trial court's decision to grant a motion for summary judgment. "Practice Book § 17-49 provides that summary judgment shall be

---

[9] The record contains copies of three collective bargaining agreements between the city and the union, which covered the time periods of 1989–1992, 1992–1995, and 1995–1999, respectively. Because there is no material difference in those agreements relevant to this appeal, for convenience we refer to them as the firefighter agreement.

rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . [T]he moving party . . . has the burden of showing the absence of any genuine issue as to all the material facts . . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the [nonmoving] party must present evidence that demonstrates the existence of some disputed factual issue. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Lucenti* v. *Laviero*, 327 Conn. 764, 772–73, 176 A.3d 1 (2018).

## I

On appeal, the defendant claims that the court improperly concluded that no genuine issue of material fact existed as to whether the decedent was entitled to receive pension benefits under the administrator agreement, rather than the firefighter agreement. We disagree.

## A

As the court noted in its decision, it is undisputed that, when the decedent was hired as the city's fire chief in 1991, he had not previously been employed by the city and had never been a member of the union.[10]

---

[10] The record indicates that the decedent previously had been employed as a firefighter in New York City before serving as an editor at Fire Department Magazine for approximately nine years.

At the time of his hire, the decedent entered into the employment contract with the city.[11] That employment contract provides in relevant part that the decedent "shall be paid an annual salary commencing November 4, 1991 at $65,000"; that he "shall be entitled to twenty days vacation"; that he "shall be entitled to sick leave as Management personnel are entitled to"; and that he "shall be entitled to all insurance . . . benefits and all other fringe benefits, *including pension if eligible, currently available to members of the Waterbury Municipal Administrators Association.*" (Emphasis added.) The employment contract further provides that "[t]his Contract embodies the whole agreement between [the city] and [the decedent] and there are no inducements, promises, terms, conditions or obligations made or entered into by either party other than those contained herein. . . . This Contract may not be changed except by a written Agreement signed by the Mayor of [the city] and [the decedent]."[12]

"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . [T]he interpretation and construction of a written contract present only questions of law, within the province of the court . . . so long as the contract is unambiguous and the intent of the parties can be determined from the agreement's face. . . . Contract language is unambiguous when it has a definite and precise meaning about which there is no reasonable basis for a difference of opinion. . . . A court will not

---

[11] A copy of the employment contract was appended to the city's memorandum of law in support of its motion for summary judgment.

[12] The record also contains an addendum to the employment contract dated January 6, 1995, which extended its term for an additional three years and increased the decedent's annual salary. Both the decedent and the city's mayor signed that addendum.

torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract . . . .'' (Citations omitted; internal quotation marks omitted.) *Christian* v. *Gouldin*, 72 Conn. App. 14, 20, 804 A.2d 865 (2002).

The employment contract plainly and unambiguously provides that the decedent may be eligible for the pension "currently available to members of the Waterbury Municipal Administrators Association.'' The employment contract also states that it embodied "the whole agreement'' between the city and the decedent and may only be changed by written agreement of those parties. That contract contains no reference whatsoever to either the union or the firefighter agreement. Moreover, the decedent and the city's mayor never entered into a written agreement to change the fringe benefits provision of the employment contract, which expressly provides a pension benefit to the decedent pursuant to the administrator agreement.[13] In light of the plain and unambiguous language contained in the employment contract, we agree with the court's conclusion that the decedent's employment with the city entitled him to a pension pursuant to the administrator agreement.

B

The defendant nevertheless argues that (1) the decedent qualified for a pension under the firefighter agreement and (2) the board awarded him such a pension. Neither contention has merit.

[13] We reiterate that the administrator agreement is the collective bargaining agreement between the Waterbury Municipal Administrators Association and the city. See footnote 8 of this opinion.

As the court observed in its decision, the decedent was never a member of the Waterbury Fire Department or the union prior to being hired as fire chief by the city. Despite that undisputed fact, the defendant maintains that the decedent qualified for a pension under the firefighter agreement.

"It is axiomatic that a collective bargaining agreement is a contract." *D'Agostino* v. *Housing Authority*, 95 Conn. App. 834, 838, 898 A.2d 228, cert. denied, 280 Conn. 905, 907 A.2d 88 (2006). For that reason, "[p]rinciples of contract law guide our interpretation of collective bargaining agreements." *Honulik* v. *Greenwich*, 293 Conn. 698, 710, 980 A.2d 880 (2009); see also *Christian* v. *Gouldin*, supra, 72 Conn. App. 20.

Article I, § 1, of the firefighter agreement recognizes the union "as the sole and exclusive bargaining agent for all full-time permanent uniformed and investigatory employees of the Waterbury Fire Department . . . ." It then specifies exactly who qualifies as an "employee," as that term is used in the firefighter agreement, stating: "The term 'employees or employee' as used in this Agreement shall refer only to those personnel who occupy positions whose job specifications required that the work be performed by uniformed and/or investigatory members of the Waterbury Fire Department and who are covered by the bargaining unit referred to herein; which bargaining unit, the parties agree, does *not* include the following positions and/or classifications: Fire Chief . . . ." (Emphasis added.) That language plainly and unambiguously provides that the fire chief is neither an employee nor a member of the union for purposes of the firefighter agreement between that bargaining unit and the city.

The defendant nonetheless argues that, read together, article I, § 4, and article XXXIII, § 3 (1), of the firefighter

agreement, compel the conclusion that the fire chief is considered an employee who is eligible for a pension under that agreement. We do not agree. Article XXXIII is the pension portion of the firefighter agreement. Section 3 (1) thereof provides: "The term 'employee' shall be defined per Article I, [§] 1, including Article I, [§] 4 of this Agreement . . . ." We already have concluded that the fire chief is categorically not an employee under article I, § 1. The remaining question is whether the decedent, in his capacity as fire chief, qualifies as an employee under article I, § 4.

Article I, § 4, of the firefighter agreement provides in relevant part that "[t]he parties . . . agree that for the purposes of [Article XXXIII], any member promoted to the rank-classification of Fire Chief . . . may, if he so elects, receive the pension benefits prescribed by, and his pension contribution will be governed by Article XXXIII hereof." For multiple reasons, we conclude that the decedent does not meet the qualifications of that section. First, the phrase "member promoted," as used therein, plainly refers to someone who previously was a member of the Waterbury Fire Department. See Firefighter Agreement, art. I, § 1 (explaining that firefighter agreement pertains to "personnel who occupy positions whose job specifications required that the work be performed by uniformed and/or investigatory members of the Waterbury Fire Department"). It is undisputed that the decedent never was a member of the Waterbury Fire Department prior to his hiring as fire chief.[14] Second, the decedent was not a member who was promoted to the rank of fire chief; the record unequivocally indicates that he was a magazine editor for nine years prior to his hiring by the city. See footnote 10 of this opinion.

---

[14] In his affidavit submitted in support of the city's motion for summary judgment, Foster averred that "[a] review of all documents that could be located with reasonable effort relating to [the decedent] found no documents indicating that he held any position of employment with [the city] or its fire department other than fire chief." The defendant does not argue otherwise.

Third, article I, § 4, provides that any member promoted to the position of fire chief "may, if he so selects, receive the pension benefits prescribed by, and his pension contribution will be governed by Article XXXIII hereof." That provision plainly and unambiguously requires members promoted to the position of fire chief to (1) make a selection to receive a pension under the firefighter agreement and then (2) make pension contributions in accordance with the requirements of article XXXIII. In moving for summary judgment and opposing the city's motion, the defendant furnished no evidence indicating that the decedent, following his hiring as fire chief by the city, made a selection to receive a pension under the firefighter agreement at any time prior to filing for retirement in 1995.

There likewise is no evidence in the record before us that the decedent made pension contributions in accordance with the requirements of article XXXIII, as expressly required by article I, § 4, of the firefighter agreement. To the contrary, the evidence in the record demonstrates that the decedent, in his four years of employment as fire chief, made pension contributions at rates of 5 percent and 6 percent, consistent with the requirements of the administrative agreement.[15] Article XXXIII of the firefighter agreement, by contrast, required pension contributions at a rate of 6 percent from the time of the decedent's hire until June 29, 1992, at a rate of 7 percent from July 1, 1992 until June 30, 1995, and at a rate of 9.5 percent from July 1, 1995 until the decedent retired on December 30, 1995.

In light of the foregoing, we conclude that no genuine issue of material fact exists as to whether the defendant qualified for a pension under the firefighter agreement.

---

[15] In her affidavit, Van Deursen averred in relevant part that, "[u]pon being hired in 1991, [the decedent] made pension contributions at the rate of 5%" and that, "[i]n July of 1993, [the decedent's] pension contribution rate increased to 6%, where it stayed until his retirement."

The pleadings, affidavits, and other evidence submitted demonstrate that the decedent (1) never was a member of the Waterbury Fire Department or the union prior to his hiring as fire chief, (2) was not an "employee," as that term is defined in article I, § 1, of the firefighter agreement, (3) was not a "member promoted," as that phrase is used in article I, § 4, of the firefighter agreement, (4) did not make a selection to receive a pension under the firefighter agreement upon being hired as fire chief, as required by article I, § 4, of the firefighter agreement, and (5) did not make pension contributions while employed as fire chief at the rates specified in article XXXIII, as required by article I, § 4, of the firefighter agreement. The court, therefore, properly determined that the decedent did not qualify for a pension under the firefighter agreement.

2

The defendant further claims that, irrespective of the decedent's entitlement to a pension under the terms of the firefighter agreement, the board in this case awarded him a disability pension under that agreement. For two distinct reasons, we disagree.

a

First, the record belies the defendant's claim. It is undisputed that, in applying for a disability pension, the decedent and his attorney requested a disability pension pursuant to the terms of the firefighter agreement. Appended to the defendant's motion for summary judgment are two letters sent to the board from the decedent and Attorney Angelo Maragos. Those letters, dated November 28, 1995 and November 30, 1995, respectively, both state in relevant part that the decedent was exercising his option, pursuant to article I, § 4, of the firefighter agreement, to receive a pension

pursuant thereto.[16] In part I B 1 of this opinion, we have explained why that request was untenable, as (1) the decedent was not a "member promoted" to the position of fire chief, as that terminology is used in the firefighter agreement, (2) there is no evidence that the decedent ever made a selection to receive a pension thereunder upon being hired as fire chief, and (3) there is no evidence that the decedent, while employed as fire chief, made the requisite pension contributions as mandated by article I, § 4, and article XXXIII of the firefighter agreement.

Although the decedent requested a pension pursuant to the firefighter agreement, the record indicates that the board did not grant that specific request. In its January 11, 1996 written notice of its decision, the board informed the decedent that it had approved his application for a disability retirement and had awarded him an annual pension of $86,690.78 pursuant to the terms of the administrative agreement.[17] The board's January 11, 1996 letter also advised the decedent in relevant part: "If you have any questions regarding your pension or benefits, please do not hesitate to contact our office." The decedent nevertheless did not raise any issue or

---

[16] In his letter to the board, the decedent stated in relevant part: "[I] do hereby make my election of Option one with regard to computing my pension entitlement under [article I, § 4, of the firefighter agreement] . . . ." Attorney Maragos similarly stated, in his letter to the board, that the decedent "makes election, pursuant to [article I, § 4, of the firefighter agreement] to retire, as is his right."

[17] Appended to the city's motion for summary judgment were copies of both the board's January 11, 1996 written notice of its decision to the decedent and the April 21, 2021 affidavit of Van Deursen, which indicate that the board granted the decedent a disability pension based on the "Waterbury Municipal Administrators Asso[ciation] (non union)." In addition, the decedent's pension worksheet similarly states that it was calculated in accordance with the "(Management) Waterbury Municipal Administration Association." The administrative agreement sets forth pension benefits for the Waterbury Municipal Administrators Association. See footnote 13 of this opinion.

request clarification with respect to the board's determination that his pension was governed by the administrative agreement. To the contrary, the record before us indicates that the decedent, after receiving written notice of the board's decision in January, 1996, proceeded to collect his pension for more than ten years without question. The defendant's claim, therefore, fails as a factual matter.

b

In addition, we note that the board's decision to grant the decedent a pension in accordance with the terms of the administrative agreement is entirely consistent with the plain and unambiguous terms of his employment contract with the city. As noted in part I A of this opinion, that contract provides that the decedent's benefits may include a pension pursuant to the administrative agreement with the Waterbury Municipal Administrators Association and that the terms of the employment contract "may not be changed except by a written Agreement signed by the Mayor of [the city] and [the decedent]." In granting the decedent a pension pursuant to the administrative agreement, the board's decision comports with the principle that municipal agencies cannot bind the municipality by contract, in the absence of express authorization in the municipal charter or the General Statutes. See *Fennell* v. *Hartford*, 238 Conn. 809, 813, 681 A.2d 934 (1996).

*Fennell* is instructive in this regard. In that case, a group of supervisory police officers brought an action against the defendant municipality and its pension commission, claiming that a statement in a pension manual prepared by the pension commission created an implied contract between the municipality and those officers. Id., 811–13. In rejecting that claim, our Supreme Court observed that "a city's charter is the fountainhead of municipal powers . . . . The charter serves as an

enabling act, both creating power and prescribing the form in which it must be exercised. . . . Agents of a city, including [its boards], have no source of authority beyond the charter. . . . In construing a city charter, the rules of statutory construction generally apply. . . . The officer, body or board duly authorized must act [on] behalf of the municipality, otherwise a valid contract cannot be created. Generally the power to make contracts on behalf of the municipality rests in the council or governing body . . . . Generally, no officer or board, other than the common council, has power to bind the municipal corporation by contract, unless duly empowered by statute, the charter, or authority conferred by the common council, where the latter may so delegate its powers . . . ." (Citation omitted; internal quotation marks omitted.) Id., 813. "It follows that agents of a city, including its [boards], have no source of authority beyond the charter. [T]heir powers are measured and limited by the express language in which authority is given or by the implication necessary to enable them to perform some duty cast upon them by express language." (Internal quotation marks omitted.) Id., 814.

The court then concluded, "as a matter of law, that the pension manual created and distributed by the commission could not confer any additional benefits not provided for by the city's charter." Id., 816. As it explained: "In order for additional retirement or pension benefits to be conferred on the plaintiffs and other city employees, the city council must adopt ordinances in compliance with the statutory and charter mandates. . . . The plaintiffs concede that this was not done. If additional benefits were allowed to be conferred in any other manner, the actions of the commission would impinge on the city council's legislative prerogative to oversee the maintenance of the city's municipal employees' retirement fund. . . . In sum, the commission was

without authority to confer additional benefits through the pension manual." (Citations omitted; footnote omitted.) Id., 817–18. The court further stated: "The plaintiffs argue that in order to carry out its obligation to administer the municipal employees' retirement fund, the commission must, by necessity, interpret the charter and confer pension benefits upon eligible recipients. We disagree. The fact that the commission has authority to administer the city's municipal employees' retirement fund does not give it authority to amend the pension plan and circumvent the city council's authority to amend the municipal employees' retirement fund." Id., 818 n.7.

In the present case, the defendant has identified no provision in the city charter that authorized the board to unilaterally grant the decedent a pension that is (1) contrary to the express terms of his employment contract and (2) pursuant to a collective bargaining agreement under which the decedent did not qualify for a pension. In this regard, we note that the defendant, in moving for summary judgment, did not furnish a copy of the entire city charter to the court, but rather appended only select portions to her memorandum of law. On appeal, the defendant relies on § 2767 of the city charter.[18] That reliance is unavailing, as that section merely provides in broad terms that official actions of the board are binding on the city. As applied to the facts of this case, § 2767 mandates that the board's decision to grant a pension to the decedent in accordance with the administrative agreement, as communicated to the decedent by written notice on January 11, 1996, is binding on the city.

---

[18] Section 2767 of the city charter provides in relevant part: "All acts, actions, payments, failures to pay, pensions, contributions from employees and proceedings of the [board] . . . are validated, confirmed, approved, ratified and made binding on the [city] and the participants in the retirement system."

The defendant also overlooks the fact that the city charter contains a distinct section titled "Adjustment of pensions paid under retirement system." It provides in relevant part: "Notwithstanding the provisions of the [city charter] or any special act or any requirements in Section 2-14 of the General Statutes . . . the [board] with the approval of the board of aldermen may by appropriate action, including approval by a majority vote . . . of said [board] and a majority vote of the board of aldermen, *with respect to monthly payments* of [disability pensions] . . . to retired employees . . . including retired teachers, firemen, policemen, officer participants and regular participants as such classifications of retired employees are established by the [city charter], provide for *adjustments in the amount of such monthly payments* as deemed necessary by said [board] and the board of aldermen . . . . Any actions taken by the [board] and the board of aldermen . . . in accordance with this act are hereby validated and . . . binding upon the [c]ity."[19] (Emphasis added.) Waterbury City Charter, Div. 2, § 2711 (1989 Supp.). Section 2711 thus demonstrates that, when the city charter intends to confer authority on the board to modify the pension benefits of a particular person, it does so explicitly. See *Stafford* v. *Roadway*, 312 Conn. 184, 194, 93 A.3d 1058 (2014) ("[i]t is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" (citation omitted; internal quotation marks omitted)).

In the present case, it is undisputed that the decedent's employment contract with the city provided for a pension benefit pursuant to the administrative agreement. To the extent that the defendant argues that the board intended to deviate from the plain terms of that

---

[19] A copy of that section of the city charter was submitted in support of the defendant's motion for summary judgment.

employment contract and grant the decedent all of the benefits contained in the firefighter agreement,[20] § 2711 of the 1989 Supplement to the city charter provides little recourse, as that section only authorizes adjustments to the amount of monthly pension payments.

Moreover, assuming arguendo that § 2711 of the 1989 Supplement to the city charter could be broadly construed to encompass pension benefits generally, the plain language of that section obligated the board to secure the approval of a majority of the board of aldermen in order to make such an adjustment to the decedent's pension benefits. There is no suggestion by the defendant, nor evidence in the record before us, that such approval was sought or granted by the board of aldermen. On the record before us, we therefore conclude that no genuine issue of material fact exists as to whether the board possessed authority under the city charter to unilaterally confer a pension benefit on the decedent pursuant to the firefighter agreement.[21]

[20] The defendant claims that the board granted the decedent *all* of the benefits contained in the firefighter agreement, including the provision pertaining to the offset of § 7-433c benefits. That provision is contained in article XXXIII, § 11, of the firefighter agreement and provides in relevant part: "The parties hereto agree that . . . an employee who applies for, and receives, a disability pension [pursuant to § 7-433c] shall be entitled to, and shall receive, a maximum disability pension of [76 percent] of BASE PAY. . . . The parties agree that the provisions of this Section shall not apply to, and shall not require a reduction of, any specific injury award [pursuant to § 7-433c]."

[21] The defendant also claims that the board's handling of her spousal pension demonstrates that it "treated [the decedent's] disability pension as a pension under the firefighter contract," as reflected on a "pension worksheet." That pension worksheet plainly states that it is a pension worksheet for "(Management) Waterbury Municipal Administration Association" and—like the written notice sent by the board to the decedent on January 11, 1996—indicates that the pension benefit was calculated pursuant to the administrative agreement. The defendant nevertheless claims that the undisputed fact that she was granted a spousal pension in excess of that to which she was entitled under the administrative agreement demonstrates an intention on the part of the board to grant the decedent a pension pursuant to the firefighter agreement. In light of our conclusion that nothing in the city charter authorized the board to grant a pension to the decedent pursuant

See *Fennell* v. *Hartford*, supra, 238 Conn. 818 n.7 ("[t]he fact that the [pension commission] has authority to administer the city's municipal employees' retirement fund does not give it authority to amend the pension plan and circumvent the city council's authority to amend the municipal employees' retirement fund").

## II

The defendant alternatively contends that § 2761 of the city charter does not permit the city to utilize the decedent's pension benefits to offset heart and hypertension benefits due to him. In response, the city submits that this claim is unpreserved. We agree with the city.

## A

Our rules of practice require a party, as a prerequisite to appellate review, to distinctly raise its claim before the trial court. See Practice Book § 5-2 ("[a]ny party intending to raise any question of law which may be the subject of an appeal must . . . state the question distinctly to the judicial authority"); Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim

to the firefighter agreement, that claim is unavailing. Any miscalculation of the defendant's spousal pension benefits by the board cannot create additional pension benefits for the decedent. See *Fennell* v. *Hartford*, supra, 238 Conn. 817–18.

We note that the city has *not* sought a reduction of the defendant's spousal pension as part of this declaratory judgment action, which she has received without interruption for almost two decades. The city merely sought a declaration that, due to the offset provision of the city charter, it is not obligated to make further payments on the decedent's heart and hypertension claim. As the city averred in its objection to the defendant's motion for reargument and reconsideration: "[The defendant] . . . assert[s] that the city cannot offset pension payments made to Janet Brennan in her capacity as surviving spouse. . . . But the city never has sought to do so. The city asserts that no additional payments are owed to the estate [of the decedent] because the pension payments made to [the decedent] during his lifetime would have been subject to an offset covering 100 percent of any [permanent partial disability] payments allegedly owed to him." (Citation omitted; emphasis omitted.)

unless it was distinctly raised at the trial or arose subsequent to the trial"). For that reason, we repeatedly have held that "we will not decide an issue that was not presented to the trial court. To review claims . . . not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *State* v. *Martin*, 110 Conn. App. 171, 180, 954 A.2d 256 (2008), appeal dismissed, 295 Conn. 192, 989 A.2d 1072 (2010); see also *State* v. *Jorge P.*, 308 Conn. 740, 753, 66 A.3d 869 (2013) ("the sina qua non of preservation is fair notice to the trial court"); *State* v. *Favoccia*, 119 Conn. App. 1, 14, 986 A.2d 1081 (2010) ("[i]t is axiomatic that issues not properly raised before the trial court ordinarily will not be considered on appeal"), aff'd, 306 Conn. 770, 51 A.3d 1002 (2012).

The record reveals, and the defendant does not dispute, that she did not raise her claim regarding the proper application of the offset provision of § 2761 of the city charter at any time prior to the court's June 27, 2022 decision on the parties' respective motions for summary judgment.[22] Although the defendant thereafter filed a motion for reargument and reconsideration, she

---

[22] The defendant's assertion that this claim arose subsequent to the court's ruling on the motions for summary judgment is unavailing. The entire basis for the city's declaratory action was its assertion that the offset provision in question operates to bar any further payments of heart and hypertension benefits to the decedent's estate. In its complaint, the city sought a declaratory judgment that "[t]he offset applies to all amounts in contention, the 'net' amount in contention is zero and the city does not have to pay the defendant any additional [heart and hypertension] benefits as a matter of law" and that "[t]he judgment for benefits issued by the [commissioner] would result in a double recovery explicitly forbidden by the [city charter] and *Russo*, therefore the city does not have to pay the defendant any monies as a matter of law . . . ." The city similarly argued, in its memorandum of law in support of its motion for summary judgment, that "any [heart and hypertension] benefits to which [the decedent] may have been entitled would have been offset, in their entirety, from the [pension] sums already being paid to him by the city."

likewise did not advance such a claim in that written motion. Rather, the record indicates that the defendant raised this claim for the first time during argument before the court on September 26, 2022.[23]

It is well established that, generally speaking, "[r]aising an issue for the first time in a motion to reargue will not preserve that issue for appellate review." *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 634, 99 A.3d 1079 (2014). For that reason, the court correctly concluded that the defendant's offset provision claim was not properly preserved. Mindful that our review of a court's denial of a motion to reargue is pursuant to the abuse of discretion standard; see *Klass* v. *Liberty Mutual Ins. Co.*, 341 Conn. 735, 740–41, 267 A.3d 847 (2022); and that motions for reargument and reconsideration are not to be used as an opportunity for a second bite of the apple; see *Hudson Valley Bank* v. *Kissel*, 303 Conn. 614, 624, 35 A.3d 260 (2012); we further conclude that the court did not abuse its discretion in denying the defendant's motion on that basis.

B

The defendant also seeks to prevail on her unpreserved claim pursuant to the plain error doctrine. As our Supreme Court has explained, "[t]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised

---

[23] The defendant also raised the issue of the tax implications of offsetting § 7-433c benefits due to pension payments for the first time at oral argument on her motion for reargument and reconsideration. On appeal, we do not address that unpreserved claim, as the defendant has not distinctly briefed that issue in accordance with our rules of practice. See Practice Book §§ 67-4 (b) and (e); see also *Weber* v. *Pascarella Mason Street, LLC*, 103 Conn. App. 710, 713–14 n.2, 930 A.2d 779 (2007). Rather, she mentions that claim in a mere sentence of the supervisory authority section of her principal appellate brief.

at all in the trial court, nonetheless requires reversal of the trial court's judgment . . . for reasons of policy. . . . [P]lain error review is reserved for only the most egregious errors. When an error of such a magnitude exists, it necessitates reversal." (Citation omitted; internal quotation marks omitted.) *State* v. *McClain*, 324 Conn. 802, 813–14, 155 A.3d 209 (2017). The defendant's burden under the first prong of that doctrine is to demonstrate the existence of an error that is "obvious in the sense of not debatable. . . . [T]his inquiry entails a relatively high standard, under which it is not enough for the defendant simply to demonstrate that [her] position is correct. Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal." (Internal quotation marks omitted.) *State* v. *Coccomo*, 302 Conn. 664, 685, 31 A.3d 1012 (2011).

On appeal, the defendant claims that the court's decision to render summary judgment in favor of the city was predicated on "an obvious misinterpretation of [§ 2761 of the city charter] as permitting the [city] to offset [§ 7-433c] benefits against pension benefits." In her view, § 2761 of the city charter permits a reduction in pension payments as a result of offsetting § 7-433c payments, but not the converse.

Section 2761 of the city charter provides: "No payments of retirement, disability or death benefits shall be allowed or paid under the provisions of this act so long or for such period as payments are being made by [the city] under the provisions of the General Statutes relating to workers' compensation except when such payments would exceed the payments made under the provisions of the Workers' Compensation Act. In such cases the pensioner shall receive, in addition to his payments under the Workers' Compensation Act the difference between that amount and the amount which

he would have received under the provisions of this act." In *Russo* v. *Waterbury*, supra, 304 Conn. 714, our Supreme Court concluded that § 2761 of the city charter "allows the city to offset the . . . pension benefits [of municipal employees] based on their heart and hypertension benefits" under § 7-433c.[24]

Although the defendant now claims that the court committed an "obvious misinterpretation" of § 2761 of the city charter to permit the offset of § 7-433c benefits due to pension payments made by the city, that error apparently was not obvious to the defendant's counsel, who did not raise that claim at any time between the commencement of this action in December, 2015, and the court's decision to grant the plaintiff's motion for summary judgment more than six and one-half years later. That error also was not obvious to the defendant at the time that she filed her motion for reargument and reconsideration in July, 2022. While the defendant raised four distinct grounds in that motion, she did not claim that the court had misinterpreted § 2761 of the city charter.

Moreover, in *Russo*, our Supreme Court, in considering the applicability of § 2761 of the city charter, emphasized that "[t]he purpose of . . . § 7-433c is to protect against a wage loss, not to give some firemen and policemen a double recovery for the same wage loss." (Internal quotation marks omitted.) Id., 730. If the defendant's construction of § 2761 of the city charter is correct— and § 7-433c benefits cannot be offset by pension payments made by the city—the result would be a double recovery by the decedent for the same wage loss. In our view, whether the city charter intended to permit that double recovery is, at the very least, debatable.[25]

---

[24] In *Brennan I*, the Supreme Court noted that "§ 7-433c benefits are subject to pension offsets and caps." *Brennan* v. *Waterbury*, supra, 331 Conn. 692.

[25] We reiterate that, in moving for summary judgment on her claim regarding the proper application of § 2761 of the city charter, the defendant did

As our Supreme Court has noted, "[p]lain error is a doctrine that should be invoked sparingly." (Internal quotation marks omitted.) *State* v. *Jamison*, 320 Conn. 589, 596, 134 A.3d 560 (2016). The defendant's burden under the first prong of that doctrine is to demonstrate proof of "an error so obvious on its face that it is undebatable." *State* v. *McClain*, supra, 324 Conn. 820 n.13. On the record before us, we conclude that the defendant has not met that burden.[26]

The judgment is affirmed.

In this opinion the other judges concurred.

---

not furnish the court with a complete copy of the city charter. The inadequacy of the record in that respect impairs our ability to conclude that the court's interpretation of the charter in the present case was obviously and indisputably incorrect. See *State* v. *Coccomo*, supra, 302 Conn. 685 (party seeking review under plain error doctrine must demonstrate "obvious and indisputable" error (internal quotation marks omitted)); *Putala* v. *DePaolo*, 225 Conn. 378, 386, 623 A.2d 989 (1993) (court required to construe section of municipal charter "in the context of the charter as a whole with a view toward reconciling its parts in order to obtain a sensible and rational overall interpretation" (internal quotation marks omitted)); *Kusterer* v. *Sheehy*, 2 Conn. App. 712, 714–15, 483 A.2d 1105 (1984) ("[t]o construe a specific provision in the charter it is necessary to look at the charter as a whole").

[26] The defendant also asks us to exercise our supervisory authority to review her unpreserved claim. See *State* v. *Turner*, 334 Conn. 660, 686–87, 224 A.3d 129 (2020). We decline that invitation.