******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JANET BRENNAN, EXECUTRIX (ESTATE OF
THOMAS BRENNAN) *v.* CITY
OF WATERBURY
(AC 45467)

Elgo, Moll and Cradle, Js.

*Syllabus*

The defendant city appealed from the judgment of the Compensation Review
Board affirming in part the decision of the workers' compensation commis-
sioner awarding certain workers' compensation benefits to the plaintiff.
The defendant claimed, inter alia, that the board improperly affirmed the
commissioner's conclusion that the plaintiff was entitled to interest pursuant
to statute (§ 7-433c). *Held*:

In light of this court's resolution of the related appeal in *Waterbury* v.
*Brennan* (228 Conn. App. 206), this court could afford the defendant no
practical relief and, therefore, the present appeal was rendered moot and
the appeal was dismissed for lack of subject matter jurisdiction.

Argued February 5—officially released September 24, 2024

*Procedural History*

Appeal from the decision of the Workers' Compensa-
tion Commissioner for the Fifth District, inter alia,
approving certain workers' compensation benefits,
brought to the Compensation Review Board, which
reversed in part the commissioner's decision and
remanded the case for further proceedings, and the
defendant appealed to this court. *Appeal dismissed*.

*Daniel J. Foster*, corporation counsel, for the appel-
lant (defendant).

*Robert C. Lubus, Jr.*, with whom was *Andrew S.
Marcucci*, for the appellee (plaintiff).

*Opinion*

ELGO, J. The defendant, the city of Waterbury (city),
appeals from the judgment of the Compensation Review
Board (board), affirming in part the decision of the

Workers' Compensation Commissioner (commissioner)[1] in favor of the plaintiff, Janet Brennan, the executrix of the estate of Thomas Brennan. On appeal, the city claims that the board improperly affirmed the commissioner's conclusions that (1) the plaintiff's entitlement to heart and hypertension benefits pursuant to General Statutes § 7-433c matured during the lifetime of the decedent, Thomas Brennan, (2) the plaintiff is entitled to statutory interest on § 7-433c benefits, and (3) the city unduly delayed payment on, and unreasonably contested, the decedent's claim for § 7-433c benefits. In light of our resolution of the related appeal in *Waterbury* v. *Brennan*, 228 Conn. App. 206,     A.3d (2024), which also was released today, we conclude that the present appeal is moot, as this court can provide the city no practical relief. Accordingly, we dismiss the appeal.

The backdrop to this appeal is detailed in *Brennan* v. *Waterbury*, 331 Conn. 672, 207 A.3d 1 (2019) (*Brennan I*). The city hired the decedent as its fire chief on November 8, 1991. See id., 675. Following a heart attack in 1993, the decedent filed a claim for § 7-433c benefits. Id., 676. In December, 1993, the commissioner issued a finding and award, concluding that the decedent had sustained a compensable injury and ordering the city to pay all benefits to which he " 'is or may become entitled.' " Id. The city and the decedent thereafter attempted, to no avail, to reach an agreement on the

---

[1] General Statutes § 31-275d (a) (1), effective October 1, 2021, provides in relevant part that, "[w]henever the words 'workers' compensation commissioner,' 'compensation commissioner,' or 'commissioner,' denote a workers' compensation commissioner in [several enumerated] sections of the general statutes, [including sections contained in the Workers' Compensation Act, General Statutes § 31-275 et seq.] the words 'administrative law judge' shall be substituted in lieu thereof . . . ."

As all events involving the workers' compensation commissioner underlying this appeal occurred prior to October 1, 2021, we refer to the workers' compensation commissioner as the commissioner.

payment of benefits.[2] Id. Although the city made advance payments to the decedent pursuant to § 7-433c in July, 1997, and in June, 1999,[3] the decedent and the city "never entered into a full and final settlement of the heart and hypertension claim." Id., 677.

The decedent died on April 20, 2006. Id., 678. As the court noted in *Brennan I*, "[i]t was not until 2013 that the decedent's attorney sought to finalize the decedent's permanent partial disability claim under § 7-433c." Id.. The decedent's attorney subsequently moved to substitute the plaintiff as party claimant. Id. The commissioner granted that motion and, in a decision dated December 7, 2015, ordered permanent partial disability benefits of 80 percent payable to her, less any advance payments made to date. Id., 278–79. On appeal, the board concluded that an estate was not a qualified recipient of vested but unpaid § 7-433c benefits. Id., 680. The board thus vacated the commissioner's decision granting the motion to substitute the plaintiff as party claimant and remanded the case to the commissioner to determine the proper recipient. Id.

From that judgment, the plaintiff appealed to this court. The Supreme Court then transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. In its decision, the Supreme Court first concluded that "§ 7-433c benefits properly may be paid to a claimant's estate, if such benefits matured before the claimant's death." Id., 682. The court further concluded that, "on the present record, we cannot state with certainty that the unpaid portion of the 80 percent

---

[2] While those negotiations were ongoing, the decedent elected to take disability retirement in December, 1995, and the city's retirement board authorized a 75 percent disability pension. *Brennan* v. *Waterbury*, supra, 331 Conn. 676–77 and n.4.

[3] The commissioner found, and the record confirms, that the city made lump sum payments toward the decedent's § 7-433c claim in the amount of $59,200.20 in 1997 and $17,982.12 in 1999.

permanent partial disability benefits necessarily matured before the decedent's death. Our uncertainty in this regard exists because the commissioner's decision does not include necessary findings on the critical issues, and we therefore leave open the possibility that the commissioner, on remand, may find that some portion of the benefits matured before the decedent's death." Id., 694. In that regard, the court explained that "permanent disability benefits mature only after the degree of permanency has been fixed by way of an award or an agreement between the parties sufficient to establish a binding meeting of the minds. . . . [W]e cannot conclude on the present record that the degree of permanency was fixed prior to the decedent's death. However, because this issue was not addressed by the commissioner, and the case is being remanded to the commissioner for further proceedings, we leave open the possibility that the commissioner may conclude that some portion of the benefits matured during the decedent's lifetime." Id., 697. The Supreme Court thus reversed the board's determination that the commissioner improperly granted the motion to substitute the plaintiff as party claimant and remanded the case for further proceedings before the commissioner "to determine the proper beneficiary and the amount of benefits due . . . ." Id., 700.

The commissioner held a hearing in accordance with that remand and issued a decision on May 21, 2021, in which he concluded, inter alia, that (1) "there was a clear meeting of the minds that the [decedent] had sustained a 77.5 [percent] permanent partial disability"; (2) the decedent's § 7-433c benefits "vested and matured on or before May 28, 1998"; (3) the decedent's estate "is entitled to all unpaid [§ 7-433c] benefits . . . less the payments made" to the decedent in July, 1997, and June, 1999; (4) "the [city] . . . is obligated to pay

statutory interest pursuant to General Statutes § 31-295, for all benefits due and owing from the date of maximum medical improvement of October 13, 1993"; (5) "the [city] unduly delayed and unreasonably contested this matter in violation of General Statutes §§ 31-288 and 31-300"; and (6) the city's "continued contest and arguments regarding the permanent partial disability issue [is] unreasonable given the Supreme Court decision in this matter, and the evidence in this case . . . which clearly establishes an agreement as to the permanent partial disability of 77.5 [percent]." The commissioner also stated that "[f]urther hearings will be held, if necessary, to address penalties and attorney's fees." In response, the city filed a motion to correct certain findings in that decision, which the commissioner denied.

The city then appealed from that decision to the board. In its April 11, 2022 decision, the board concluded that the commissioner had "properly determined that the parties had reached a compromise permanency agreement prior to May 28, 1998," and that said agreement was sufficient to establish a binding meeting of the minds pursuant to the Supreme Court's decision in *Brennan I*. The board also rejected the city's claim that a risk manager for the city lacked authority to bind the city to that agreement. With respect to the commissioner's award of interest under § 31-295 (c), which, the board noted, is not triggered "until the determination has been made that the claimant is entitled to the permanency benefits and the issue is no longer the subject of litigation," the board stated that it was "unable to identify" the date on which that interest should begin to accrue "on the basis of either the evidentiary record or the [commissioner's] findings . . . ." (Citation omitted.) The board therefore concluded that the commissioner's decision was erroneous in that limited regard and remanded the matter "for clarification relative to

the commencement date for the statutory interest . . . ." Although the board rejected the city's challenge to the award of penalties and attorney's fees, as no such award had yet been granted, the board remanded the matter to the commissioner "for additional proceedings on that issue, as well." From that decision, the city appealed to this court on May 2, 2022.

Distinct from this workers' compensation proceeding is a declaratory judgment action brought in the Superior Court by the city against the plaintiff[4] in 2015, regarding her entitlement to any further § 7-433c benefits.[5] As we noted in *Waterbury* v. *Brennan*, supra, 228 Conn. App. 209–10, "[t]he gist of [the city's] complaint [in that action] was that, due to a pension offset provision in the 1967 Waterbury city charter (city charter), no further heart and hypertension payments were due to the [plaintiff]. The city thus sought a declaratory judgment that (1) '[p]ursuant to *Russo* [v. *Waterbury*, 304 Conn. 710, 41 A.3d 1033 (2012)], the city charter and [the decedent's] employment contract, any [§ 7-433c] benefits allegedly due to [the decedent] . . . would have resulted in an offset of the [plaintiff's] or [the decedent's] pension'; (2) '[t]he offset applies to all amounts in contention, the "net" amount in contention is zero and the city does not have to pay the [plaintiff] any additional [§ 7-433c] benefits as a matter of law'; and (3) '[t]he judgment for [§ 7-433c] benefits issued by the [commissioner] would result in a double recovery explicitly forbidden by the [city charter] and *Russo*, therefore the city does not have to pay the [plaintiff] any monies as a matter of law . . . .' " (Footnote omitted.) By order dated June

---

[4] The city brought that action against Janet Brennan in both her individual capacity and as executrix of the estate of the decedent. *Waterbury* v. *Brennan*, supra, 228 Conn. App. 207 n.1.

[5] It is well established that an appellate court may "take judicial notice of the court files in another suit between the parties . . . ." *McCarthy* v. *Warden*, 213 Conn. 289, 293, 567 A.2d 1187 (1989), cert. denied, 496 U.S. 939, 110 S. Ct. 3220, 110 L. Ed. 2d 667 (1990).

27, 2022, the trial court in that action rendered summary judgment in favor of the city. In its decision, the court concluded that (1) the plaintiff could not "escape the . . . offset rules reducing amounts payable under workers' compensation awards by amounts that are received by way of pension payments" from the city and (2) the offsets in that case exceeded the amount of § 7-433c benefits due to the plaintiff "so as to relieve the city of *any* liability for payments on account of workers' compensation awards." (Emphasis added.)

The plaintiff thereafter filed a motion for reargument and reconsideration of that decision, which the court denied. In that motion, the plaintiff did not challenge the propriety of the court's determination that the amount of the offsets stemming from pension payments to the decedent relieved the city of "any liability for payments on account of workers' compensation awards."[6] The plaintiff likewise did not seek an articulation of the court's decision in that regard or file a motion for review with this court. See Practice Book §§ 66-5 and 66-6; see also *Orcutt* v. *Commissioner of Correction*, 284 Conn. 724, 739 n.25, 937 A.2d 656 (2007) ("in the absence of an articulation . . . [an appellate court will] presume that the trial court acted properly").

On January 13, 2023, the plaintiff appealed to this court from the judgment of the trial court in that declar-

___

[6] The plaintiff advanced "four reasons" in support of her motion for reargument and reconsideration. She argued that (1) there was a genuine issue of material fact as to whether the decedent had been granted a pension pursuant to a collective bargaining agreement between the city and the Waterbury Firefighters Association, Local 1339; (2) the court incorrectly determined that the city's retirement board "lacked the authority to bind the city to providing a disability pension" pursuant to that collective bargaining agreement; (3) the court's decision permitting the offset of § 7-433c benefits was "impermissible as the benefits are to be paid to two distinct legal entities"; and (4) the court's decision "left unanswered the issue of the length of time the [city] is permitted to offset *Janet Brennan's pension benefits* when the remaining [§ 7-433c] benefits are past due in one lump sum payment." (Emphasis added.)

atory judgment action.[7] In *Waterbury* v. *Brennan*, supra, 228 Conn. App. 206, we concluded that the court properly rendered summary judgment in favor of the city in the declaratory judgment action and affirmed its decision in all respects, including its determination that no further payments related to the decedent's heart and hypertension claim were due to the plaintiff. In light of that conclusion, a question of mootness arises with respect to the present appeal.[8]

"Mootness presents a legal question and implicates this court's subject matter jurisdiction, a threshold matter to resolve. . . . This court has a duty to dismiss cases over which it lacks subject matter jurisdiction, which cannot be conferred by the consent of the parties." (Citation omitted.) *Gladstein* v. *Goldfield*, 325 Conn. 418, 424, 159 A.3d 661 (2017). "[T]he question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, *at any time* . . . ." (Emphasis in original; internal quotation marks omitted.) *M&T Bank* v. *Lewis*, 349 Conn. 9, 20, 312 A.3d 1040 (2024). Our review of the question of mootness is plenary. *State* v. *Rodriguez*, 320 Conn. 694, 699, 132 A.3d 731 (2016).

---

[7] On February 5, 2024, this court heard oral argument on both Docket No. AC 46178, the plaintiff's appeal from the judgment of the trial court in the declaratory judgment action, and Docket No. AC 45467, the city's appeal from the decision of the board now before us.

[8] By order dated July 25, 2024, this court ordered the parties to file simultaneous supplemental briefs on "whether, if this court concludes that the trial court properly rendered judgment in favor of the . . . city in [Docket No.] AC 46178, this court can provide the parties any practical relief in AC 45467 or whether that appeal must be dismissed as moot." In its supplemental brief, the city—the sole appellant in this appeal—concedes that, if this court were to affirm the judgment of the trial court in Docket No. AC 46178, "there will be no practical relief that can be granted through disposition of the merits of [the claims raised in] the present appeal, and this appeal will be moot."

"[M]ootness implicates the well established rule that [a]n actual controversy must exist not only at the time [an] appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . [T]he requirement of an actual controversy . . . is premised upon the notion that courts are called upon to determine existing controversies, and thus may not be used as a vehicle to obtain advisory judicial opinions on points of law. . . . [I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In short, [when] the question presented is purely academic, we must refuse to entertain the appeal." (Citations omitted; internal quotation marks omitted.) *Gladstein* v. *Goldfield*, supra, 325 Conn. 424–25.

As our Supreme Court observed more than one-half century ago, "the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . The question may be made moot by the act of the court from which the appeal is taken, as where pending an appeal some judgment or order rendered or made in the cause renders the determination of the questions presented by the appeal unnecessary. Likewise it may arise from the act of another court or judge." (Citation omitted.) *Reynolds* v. *Vroom*, 130 Conn. 512, 515, 36 A.2d 22 (1944). We conclude that the city's appeal in the present case has been rendered moot due to our decision in *Waterbury* v. *Brennan*, supra, 228 Conn. App. 206.

In the present case, the city asks this court to determine whether the board improperly affirmed the commissioner's conclusions that (1) the plaintiff's entitlement to § 7-433c benefits matured during the decedent's lifetime, (2) the plaintiff is entitled to statutory interest on § 7-433c benefits, and (3) the city unduly delayed and unreasonably contested the decedent's claim for § 7-433c benefits. Those questions are purely academic in light of our decision in *Waterbury* v. *Brennan*, supra, 228 Conn. App. 206. In rendering summary judgment in favor of the city in the declaratory judgment action, the trial court concluded that an offset provision in the city charter relieved the city of "*any liability* for payments on account of workers' compensation awards." (Emphasis added; internal quotation marks omitted.) Id., 211. On appeal, we affirmed that judgment. Id., 207, 230. Accordingly, the city is not liable for any payments to the plaintiff arising from the decedent's claim for § 7-433c benefits beyond those that it made to the decedent in July, 1997, and June, 1999. See footnote 3 of this opinion. Because the city is not liable for such payments, it follows that the city cannot be liable for statutory interest, penalties, or attorney's fees for delaying payment thereon.[9] For that reason, resolution of the claims raised in this appeal would not benefit the parties in any meaningful way.[10] See *State* v. *Lester*,

---

[9] See General Statutes § 31-288 (b) (providing for civil penalties when payment of "compensation due" to claimant is unduly delayed by employer); General Statutes § 31-295 (c) (employer shall pay interest only on sums that "the employee is entitled to receive" that "are not so paid"); General Statutes § 31-300 (("[i]n cases where, through the fault or neglect of the employer or insurer, adjustments of compensation have been unduly delayed, or where . . . payments have been unduly delayed, the administrative law judge may include in the award . . . a reasonable attorney's fee"). Pursuant to the plain language of those statutes, a prerequisite to recovery thereunder is the existence of a workers' compensation payment due and owing to a claimant.

[10] In her supplemental brief filed with this court, the plaintiff argues that, because workers' compensation benefits are nontaxable, "the city caused [the decedent] to pay taxes on funds that were not taxable." She thus asserts that, "[u]nless handled within the compensation claim, [the plaintiff] upon final judgment would have a new suit against [the city] for intentionally

324 Conn. 519, 526, 153 A.3d 647 (2017) ("[i]n determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way" (internal quotation marks omitted)). In light of the foregoing, we conclude that the city's appeal is moot and must be dismissed for lack of subject matter jurisdiction.

The appeal is dismissed.

In this opinion the other judges concurred.

---

misreporting the payments as taxable." That tax issue is not properly before us, as it was not raised at any time before the commissioner or the board. The plaintiff likewise did not raise it in her appellate brief with this court.